[No. 26553-9-I.  Division One.  May 26, 1992.]

THE STATE OF WASHINGTON, *Appellant*, v. MICHAEL DESHON GAINES, *Respondent*.

*Norm Maleng, Prosecuting Attorney,* and *Peter Goldman, Deputy,* for appellant.

*Helen A. Anderson* of *Washington Appellate Defender Association,* for respondent.

AGID, J. — The State challenges the trial court's imposition of an exceptional sentence below the standard range for the defendant's violation of the Uniform Controlled Substances Act, RCW 69.50, aiding the delivery of cocaine. The court imposed an exceptional sentence of 12 months' confinement and 12 months' inpatient drug treatment, rather than a standard range sentence of 31 to 41 months. We affirm.

## I

### FACTS

On May 3, 1990, Gaines pleaded guilty to aiding in a delivery of cocaine. The State alleged that undercover police officer M. Alphin approached Gaines on the street, asked him if he had a "twenty", and that Gaines replied that he could get the officer some cocaine. Gaines called over to a woman who had some cocaine, and she joined Gaines and Alphin in Alphin's car. The woman handed a piece of rock cocaine to Gaines, who handed it to Alphin. Alphin then gave Gaines $20, which Gaines gave the woman.

During the sentencing hearing, defense counsel read a statement by Gaines to the trial court. Gaines stated that

he was "high" at the time he facilitated the drug transaction, and that Alphin promised to give him a "hit" if Gaines helped Alphin buy some cocaine. After the drug transaction occurred, Alphin gave Gaines a "hit".

The State requested a sentence of 41 months in jail, the high end of the 31 to 41 month standard sentencing range. Defense counsel argued, on the basis of a treatment alternatives to street crime (TASC) report concluding that Gaines' substance abuse problem was the motivating factor for his criminal activity, that he should be given an opportunity for drug rehabilitation. The trial court agreed and, over the State's objection, imposed an exceptional sentence of 12 months' confinement and 12 months' community supervision, to be served in the inpatient drug rehabilitation program at Seadrunar.

The State's appeal followed.

## II
### DISCUSSION

The State argues that the trial court's findings in support of the exceptional sentence are clearly erroneous and that the court had no authority under the Sentencing Reform Act of 1981 (SRA) to impose drug treatment as part of the sentence. A trial court may impose an exceptional sentence above or below the standard range when it finds "substantial and compelling" reasons for doing so.[1] RCW 9.94A.120(2); *State v. Allert*, 117 Wn.2d 156, 163-64, 815 P.2d 752 (1991); *State v. Pennington*, 112 Wn.2d 606, 608, 772 P.2d 1009 (1989). If the court orders an exceptional sentence, it must set forth the reasons for its decision in written findings of fact and conclusions of law. RCW 9.94A.120(3); *State v. Nordby*, 106 Wn.2d 514, 516, 723 P.2d 1117 (1986). While the SRA provides a list of aggravating and mitigating circumstances that the court may consider in imposing an exceptional sentence, these

---

[1]Under two other exceptions not applicable here, the court may also impose an exceptional sentence in cases involving first-time and sexual offenders. RCW 9.94A.120(5), (7)(a).

factors are only illustrative and not exclusive. RCW 9.94A-.390; *Nordby*, 106 Wn.2d at 516.

Appellate review of an exceptional sentence is governed by RCW 9.94A.210(4), which provides:

> To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

*State v. Estrella*, 115 Wn.2d 350, 355, 798 P.2d 289 (1990). The State argues that several of the trial court's findings are not supported by the record, and that its reasons do not justify a sentence below the standard range. Neither party addresses subsection (b), and thus whether the sentence was too lenient is not at issue. *See Estrella*, 115 Wn.2d at 355.

A. Sufficiency of the Findings.

■ There are two inquiries under RCW 9.94A.210(4)(a). The first is whether the trial court's reasons for imposing an exceptional sentence are supported by the record. We will uphold the trial court's findings unless they are clearly erroneous. *Estrella*, 115 Wn.2d at 355; *Pennington*, 112 Wn.2d at 608. The trial court made the following findings of fact: (1) that the defendant is addicted to numerous drugs, including alcohol and cocaine, and that his prior and current criminal activity is directly related to his addiction and substance abuse dependency; (2) that the defendant requires intensive inpatient treatment beyond that which is available in prison; (3) that the defendant is amenable to long-term residential drug treatment, that he has shown the requisite motivational factors necessary to his success, and that he has not received any drug treatment in the past; (4) that without treatment for drug dependency, the defendant is very likely to reoffend; therefore, society would be better protected by placing him in a drug rehabilitation program; and (5) that a standard range sentence would not promote the State's interests in both punishing the defendant and rehabilitating him to prevent

his commission of offenses in the future. The State challenges findings 1, 4 and 5.

We hold that the challenged findings are supported by the record. First, the finding that Gaines is addicted to numerous drugs and that his current and prior criminal activity is directly related to his addiction is clearly supported by the record. The fact that Gaines participated in the drug transaction solely to get a "hit" of cocaine, coupled with Gaines' criminal and drug history as detailed in the TASC report, establish the causal relationship between his drug habit and criminal conduct. The TASC report indicates that Gaines has abused alcohol and other drugs since the age of 14, and that all of his prior crimes were drug related.

The second finding challenged on appeal, that Gaines is likely to reoffend without treatment, and the parallel conclusion, that society would be better protected if Gaines were given an opportunity for treatment, is also supported by the evidence. The TASC report states that Gaines is motivated to participate in treatment and that he has never before been given the chance to obtain treatment. Further, the record shows that prior incarceration has done nothing to deter his criminal conduct.

The State argues, however, that the second sentence of finding 4 is a legal conclusion rather than a finding of fact. It contends that this "finding" is therefore clearly erroneous. *See Pennington*, 112 Wn.2d at 609.[2] The trial court's mischaracterization of this sentence as a factual finding does not require us to overturn the finding. Rather, a conclusion of law which is erroneously denominated a finding of fact is reviewed as a conclusion of law. *State v. Williams*, 96 Wn.2d 215, 220-21, 634 P.2d 868 (1981). A conclusion of law will be upheld if it is supported by the findings. *Williams*; *State v. Young*, 83 Wn.2d 937, 938, 523 P.2d 934 (1974). Here, the question of whether the defendant is likely to reoffend without treatment is a factual determination which is clearly supported by the evidence. It follows from this determination that Gaines would be less likely to reoffend if he did receive

---

[2]The *Pennington* court held that a similar finding was "clearly erroneous" on the sole basis that the finding was actually a conclusion of law.

treatment, and that society would therefore be better protected by a sentence which includes drug treatment. Thus, the conclusion is supported by the first sentence of finding 4. We therefore uphold the challenged conclusion. *See Allert* (upholding the determination that the exceptional sentence imposed would sufficiently protect the public on the basis of expert testimony that the defendant was unlikely to reoffend if he was successful in alcohol treatment).

Finally, the State contends that finding 5 is also clearly erroneous on the basis that it is not a finding of fact but a legal conclusion. For the reasons stated above, we treat this finding as a conclusion of law and analyze it in the same manner as the second sentence of finding 4. Implicit in the court's determination that a standard range sentence would not promote the State's interest in both punishing and rehabilitating the defendant is the factual finding that standard sentences have not served to deter Gaines from committing further drug-related offenses. Also implicit in finding 5 are the unchallenged factual findings that Gaines requires treatment beyond that which is available in Department of Corrections facilities and that he has not been provided treatment before. Because all of these findings are supported by the record, and the State presented no contrary evidence, they support the trial court's conclusion stated in finding 5. In sum, the trial court's findings are established by the record and we uphold them.

B. "Substantial and Compelling" Inquiry.

■ The second inquiry, whether the trial court's reasons for imposing an exceptional sentence are "substantial and compelling", must be determined in light of the SRA's goals.

> The goals of the SRA are to ensure that the punishment for an offense is proportionate to the seriousness of the offense and the offender's criminal history; promote respect for the law by providing punishment that is just; be commensurate with the punishment imposed on others committing similar offenses; protect the public; offer the offender an opportunity to improve him or herself; and make frugal use of the State's resources.

*Estrella*, 115 Wn.2d at 357; RCW 9.94A.010. Because the first three of these purposes focus on punishment, our courts have

held that the SRA's paramount goal is punishment. *Estrella*, 115 Wn.2d at 357; *Pennington*, 112 Wn.2d at 611. In its other stated purposes, the Legislature also intended that the utilitarian goals of protecting the public and giving the offender a chance to improve himself be accomplished. *State v. Bernhard*, 108 Wn.2d 527, 541, 741 P.2d 1 (1987).

In two recent cases, this court has reversed exceptional sentences of which drug treatment was a part primarily on the basis that the sentences imposed did not meet the requirement that sentences be proportionate to the seriousness of the offense and the defendant's criminal history. *State v. Laik*, 62 Wn. App. 734, 815 P.2d 822 (1991), *review denied*, 118 Wn.2d 1011 (1992); *State v. Harper*, 62 Wn. App. 69, 813 P.2d 593 (1991), *review denied*, 118 Wn.2d 1017 (1992). In *Harper*, the defendant pleaded guilty to two counts of second degree burglary. Harper had seven prior felony convictions, committed intermittently during the previous 12 to 13 years, giving him an offender score of 12. Although the standard range sentence for his crimes was 43 to 57 months' confinement, the trial court imposed an exceptional sentence of 188 days in jail, 240 hours of community service, 2 years of community supervision, and 18 months' inpatient drug rehabilitation. The trial court entered the following findings to support its reasons for imposing the sentence:

> (1) Harper's long history of drug addiction is the primary reason for committing the crime, (2) further incarceration will not deter Harper from future crimes, (3) adequate drug treatment is the only reliable way to prevent future crimes, (4) Harper is amenable to treatment, and (5) the community is better protected if Harper is placed in treatment.

*Harper*, 62 Wn. App. at 71.

The court determined that these reasons were not substantial and compelling enough to justify the exceptional sentence. However, the court's main concern was that punishment for defendants sentenced to drug treatment and other similarly situated defendants not be "vastly disparate". *Harper*, 62 Wn. App. at 74. Because the trial court had ordered Harper to serve only 188 days in jail, a significant disparity existed between the standard range of 43 to 57

months and the sentence imposed. This disparity ran afoul of the SRA's mandate that sentences be proportional based on the nature of the offense and the defendant's prior criminal record. *Harper*, 62 Wn. App. at 76-78.

In *Laik*, the court followed *Harper* and reached the same result. There, the trial court sentenced the defendant to 18 months in a drug rehabilitation program and 24 months of community supervision. Laik was not ordered to serve any time in jail or prison. As the basis for its sentence, the trial court found that Laik's heroin addiction was the reason for his criminal activity, that he was under the influence of heroin when he committed the crime of delivering heroin, that unless he received drug treatment he would continue to commit crimes to support his drug habit, and that he would not receive adequate drug treatment in prison. *Laik*, 62 Wn. App. at 735. Concluding that the sentence failed to fulfill the SRA's paramount goal of punishment, the court determined that these reasons were insufficient to support the exceptional sentence.[3] 62 Wn. App. at 737-38.

For the same reason, the Supreme Court in *Estrella* reversed a trial court's exceptional sentence of 1 year of confinement followed by 1 year of work release and 2 years of community supervision for the crime of second degree burglary. The trial court based its exceptional sentence on findings that the defendant had little formal education, that he was never given assistance after release from jail to find employment and readjust to society, that he was willing to participate in a self-help program, and that he would be less likely to reoffend if he were given the opportunity to reintegrate into society gradually with guidance and supervision. *Estrella*, 115 Wn.2d at 353. On the basis that the defendant had an offender score of 14 and that his standard sentencing range was 43 to 57 months, the court determined that the sentence imposed was inconsistent with the SRA's primary purpose of punishment. 115 Wn.2d at 359-60.

---

[3]The court also based its reversal of the sentence on the fact that nothing distinguished Laik's drug delivery from other drug transactions. Further, the court stated, "[t]he fact that Laik is a drug addict and that, despite incarceration, he continues to commit crimes to support his addiction is not extraordinary." *Laik*, 62 Wn. App. at 737.

In contrast to *Harper*, *Laik* and *Estrella*, the sentence imposed in this case meets the proportionality requirement and is therefore consistent with the SRA's punishment goals. In this case, the standard range for Gaines' offense, based on an offender score of 2, was 31 to 41 months. He was ordered to serve 24 months in custody, consisting of 12 months in jail and 12 months in an inpatient drug treatment program. Assuming Gaines receives good time in jail, his total period of confinement will be 20 months. Had the trial court imposed a standard range sentence, it is likely that the sentence would have been at the low end of the standard range since the court believed that an exceptional sentence downward was appropriate under the circumstances of this case. Under such a sentence, Gaines would have spent less than 24 months in custody. With good time, his actual incarceration would have been about 20⅔ months. Thus, unlike the sentences imposed in *Harper*, *Laik* and *Estrella*, the sentence imposed here is not disproportionate to the seriousness of the offense and the defendant's criminal history. Further, the sentence is commensurate with sentences imposed on others who have committed similar offenses.[4] RCW 9.94A.010(1), (3).

---

[4]This case is also distinguishable from *Pennington*, 112 Wn.2d at 607, and *In re Chatman*, 59 Wn. App. 258, 796 P.2d 755 (1990). In *Pennington*, the court imposed an exceptional sentence of 12 months in jail and 6 months' inpatient drug treatment on a standard range sentence of 31 to 41 months. There, the court held that the findings articulated by the trial court in support of the sentence were clearly erroneous. Most notably, the evidence showed that the defendant committed the robbery to satisfy his girlfriend's drug habit. Thus, the defendant's own drug addiction was not the reason he committed the offense. *Pennington*, 112 Wn.2d at 609. Here, by contrast, the record clearly supports the trial court's finding that Gaines participated in the drug transaction in order to obtain cocaine to feed his own drug habit. His criminal conduct is therefore directly related to his addiction. In *Chatman*, the defendant was faced with a standard range sentence of 43 to 57 months. The trial court imposed a 57-month jail term, but then suspended 33 months and ordered the defendant to serve 24 months in jail and participate in 9 to 12 months of drug treatment. The court reversed the sentence, in part because the trial court has no authority to suspend sentences under the SRA. *Chatman*, 59 Wn. App. at 262. Accordingly, the court did not reach the issue of whether the trial court's findings were "substantial and compelling" reasons justifying an exceptional sentence under RCW 9.94A.120(2).

Moreover, unlike the cases cited *infra*, Gaines' participation in the drug delivery is distinguishable from the participation of others in similar crimes. As further support for its exceptional sentence, the trial court relied on an independent mitigating factor under the SRA. Under RCW 9.94A.390(1)(f), in exercising its discretion to impose an exceptional sentence, a trial court may consider as a mitigating factor that:

> The offense was principally accomplished by another person and the defendant manifested extreme caution or sincere concern for the safety or well-being of the victim.

Since this was a victimless crime, the second part of the mitigating factor, dealing with the defendant's expression of concern for the victim's safety, does not apply. The record supports the trial court's conclusion that the drug transaction was principally accomplished by the woman who possessed the cocaine before the sale. Gaines' participation was limited to signaling the seller that the buyer was interested in purchasing drugs. Further, the State did not challenge the trial court's reliance on this factor as a mitigating circumstance. It is therefore assumed correct on appeal. *State v. Slanaker*, 58 Wn. App. 161, 165, 791 P.2d 575 (an unchallenged conclusion of law becomes the law of the case), *review denied*, 115 Wn.2d 1031 (1990).

The State argues that *Pennington* and *Estrella* stand for the proposition that a defendant's "drug or alcohol problem in and of itself is not a substantial or compelling reason justifying imposition of an exceptional sentence." *Pennington*, 112 Wn.2d at 611; *Estrella*, 115 Wn.2d at 359. However, as demonstrated above, the findings made in this case, together with the statutory mitigating factor, distinguish it from *Pennington, Estrella, Harper* and *Laik*. Here, there is far more than a mere finding that the defendant is addicted to drugs to support the trial court's imposition of an exceptional sentence.

By combining mandatory inpatient drug treatment with a term of confinement, the trial court ensured not only that the SRA's punishment goal would be met, but that the SRA's utilitarian purposes would be furthered as well. *See Bernhard*, 108 Wn.2d at 541. Under the circumstances of this case, a sentence that did not include some form of drug treatment

for Gaines' alcohol and drug addictions would not have furthered the SRA's goals of offering the offender an opportunity for self-improvement and protecting the public. Because Gaines' criminal behavior directly resulted from his addictions, the likelihood that he would reoffend after release from confinement was high. Thus, a sentence of confinement only could not protect the public from the defendant's predictable future criminal behavior. *Bernhard*, 108 Wn.2d at 543-44.

C. Trial Court's Jurisdiction To Impose an Exceptional Sentence.

We next address the State's contention that the trial court exceeded its jurisdiction under the SRA in imposing drug treatment as part of its exceptional sentence. The State argues that the rationale of *Bernhard* does not apply to defendants whose "presumptive ranges" exceed 1 year. We disagree. In *Bernhard*, the court relied in part on the community supervision statute, RCW 9.94A.383, to uphold an exceptional sentence of 12 months in an inpatient drug treatment program. RCW 9.94A.383 states that, "[o]n all *sentences* of confinement for one year or less, the court may impose up to one year of community supervision." (Italics ours.) Because Bernhard's sentence did not exceed 1 year, the trial court had discretion under that provision to impose community supervision in lieu of total confinement. The court further determined that the SRA's exceptional sentence provision, RCW 9.94A-.120(2), permitted the court to order the defendant to participate in an inpatient drug rehabilitation program as a condition of the community supervision sentence. *Bernhard*, 108 Wn.2d at 540.[5]

---

[5]We disagree with the State's contention that *Bernhard* has been overruled. In *State v. Shove*, 113 Wn.2d 83, 776 P.2d 132 (1989), the court rejected dicta in *Bernhard* suggesting that the trial court has the power to alter the defendant's sentence after it has been imposed and the defendant has served part of his or her term. The *Shove* court held that sentences may only be modified when one of the specific circumstances provided in the SRA is present. Since none of those circumstances applied to Shove's situation, the trial court lacked jurisdiction to modify the defendant's sentence after she had served a portion of it. *Shove*, 113 Wn.2d at 86-89. As the *Shove* court noted, sentence modification was not at issue in *Bernhard*. Nor is that an issue here. Thus, *Bernhard* remains valid precedent as it applies to the issues presented in this case. Further, as recently as *Estrella*, the Supreme Court has stated, citing *Bernhard*, that "under some circumstances rehabilitative conditions may be imposed as part of an exceptional sentence." *Estrella*, 115 Wn.2d at 358.

In *State v. Wiley*, 63 Wn. App. 480, 820 P.2d 513 (1991), the trial court imposed an exceptional sentence of 12 months of confinement and 12 months of community supervision for a drug conviction. As a condition of his community supervision sentence, the defendant was ordered to complete 9 to 12 months in an inpatient drug treatment program. Although the State failed to object to the sentence at trial, it argued that the sentence was subject to appellate review on the basis that the trial court exceeded its statutory authority by imposing a sentence not authorized under the SRA. Had the trial court in fact exceeded its jurisdiction in imposing the sentence, the State would have been entitled to raise the issue for the first time on appeal. *Wiley*, 63 Wn. App. at 482. Rejecting the State's position, we held that the issue had not been preserved because the court was authorized, under RCW 9.94A.383, to impose an additional term of community supervision of up to 12 months when the sentence actually imposed was 12 months of confinement. 63 Wn. App. at 482-83.

■■ Thus, in arguing that the court may impose drug treatment as part of an exceptional sentence only when the *standard range* is 1 year or less, the State misinterprets RCW 9.94A.383. As we stated in *Wiley*, the determining factor is the actual sentence of confinement; "[i]t is irrelevant what the standard range was." 63 Wn. App. at 482. Here, as in *Wiley*, the trial court sentenced the defendant to 12 months of confinement. The court therefore did not exceed its authority under RCW 9.94A.383 in imposing an additional term of community supervision. Further, it was well within the court's jurisdiction to impose as a condition of the community supervision portion of the sentence the requirement that the defendant serve that time in an inpatient drug treatment program. *Bernhard*, 108 Wn.2d at 540.

In summary, we hold that the trial court did not exceed its sentencing authority under the SRA. The findings upon which the trial court relied in imposing the exceptional sentence are supported by the evidence. Taken together with

the statutory mitigating factor, the trial court's reasons are substantial and compelling justification for ordering an exceptional sentence. Under the limited circumstances here, where the sentence imposed is commensurate with the standard range sentence, the defendant is a minor participant in a crime resulting from his drug addiction, and he has had no prior opportunity for drug treatment, an exceptional sentence including confinement in an inpatient drug rehabilitation program may be imposed.

Affirmed.

SCHOLFIELD, J., concurs.

GROSSE, C.J. (concurring) — The majority's jurisdictional analysis and its determination that the trial court's findings are supported in the record are sound. I take issue with the majority's opinion however because it does not adequately take into account Supreme Court precedent elaborating what constitutes "substantial and compelling" circumstances justifying the imposition of an exceptional sentence.

I do not fault the majority for concluding that *State v. Laik*, 62 Wn. App. 734, 815 P.2d 822 (1991), *review denied*, 118 Wn.2d 1011 (1992) and *State v. Harper*, 62 Wn. App. 69, 813 P.2d 593 (1991), *review denied*, 118 Wn.2d 1017 (1992), are distinguishable from the case at bar insofar as they reversed exceptional sentences "of which drug treatment was a part primarily on the basis that the sentences imposed did not meet the requirement that sentences be proportionate to the seriousness of the offense and the defendant's criminal history." Majority, at 797. For the reasons developed in the majority's opinion, those cases can indeed be distinguished on that basis.

The flaw in the majority's reasoning is not one of commission but of omission. Although the majority's treatment of the requirement of "substantial and compelling" does not distort case law, it ignores a limitation expressly articulated by the Washington Supreme Court in *State v. Estrella*, 115

Wn.2d 350, 798 P.2d 289 (1990). There, the court indicated that an exceptional sentence may be imposed only where the circumstances of the crime distinguish it from others within the same statutory category. *Estrella*, 115 Wn.2d at 359 (citing and elaborating *State v. Pennington*, 112 Wn.2d 606, 610-11, 772 P.2d 1009 (1989)).

The majority characterizes *Estrella* as decided on the following basis: "that the defendant had an offender score of 14 and that his standard sentencing range was 43 to 57 months, the court determined that the sentence imposed was inconsistent with the SRA's primary purpose of punishment." Majority, at 798 (citing *Estrella*, 115 Wn.2d at 359-60). That statement, although correct, is incomplete. Also weighty in the court's estimation was that the facts of that case did not distinguish it from others in the same statutory category. *Estrella*, 115 Wn.2d at 359. It is that aspect of *Estrella* which the majority ignores.

The trial court articulated its reasons for imposing an exceptional sentence as follows: (1) the defendant is addicted to numerous drugs, including alcohol and cocaine, and that his prior and current criminal activity is directly related to his addiction and substance abuse dependency; (2) the defendant requires intensive inpatient treatment beyond that which is available in prison; (3) the defendant is amenable to long-term residential drug treatment, and has not received drug treatment in the past; and (4) a standard range sentence would not promote the State's interests in both punishing and rehabilitating the defendant to prevent his commission of future offenses. None of these reasons distinguish this crime from others in the same statutory category.

That is not to say that on this record the trial court erred in deviating from the standard sentence range. The majority suggests as much when it indicates that the record supports a finding that the offense was principally committed through another person. See majority, at 800, referencing RCW 9.94A.390(1)(f). There is little doubt that the record would

have permitted the trial court, by virtue of the mitigating circumstances attending the crime, to distinguish it from others within the same category, and thus to have properly imposed an exceptional sentence. RCW 9.94A.390 for example provides that the court in deviating from the standard sentence range may consider as mitigating factors the following:

(1) Mitigating Circumstances
(a) To a significant degree, the victim was an initiator, willing participant, aggressor, or provoker of the incident.
. . . .
(c) The defendant committed the crime under duress, coercion, threat, or compulsion insufficient to constitute a complete defense but which significantly affected his or her conduct.
. . . .
(f) The offense was principally accomplished by another person and the defendant manifested extreme caution or sincere concern for the safety or well-being of the victim.

The record here indicates that the participants in the offense were willing, that Gaines participated in the transaction in exchange for a "hit" of cocaine, and that Gaines was a mere conduit in a transaction principally consummated between two other individuals, the person who delivered the controlled substance and the undercover agent who received it. These mitigating circumstances, expressly contemplated by the statute, and manifestly present here, together with the majority's analysis distinguishing *Laik* and *Harper*, supply a more solid ground for affirming the trial court's disposition of this case.

Review granted at 120 Wn.2d 1001 (1992).